**Exhibit 3**

## Exhibit C 1/AS1 6

| SUPPLY CONTRACT MC-009/2013 | ДОГОВОР ПОСТАВКИ МС-009/2013 |
|---|---|

February 11, 2013                    Dushanbe

11 февраля 2013года                    Душанбе

Company "SUPER PERFECT INVESTMENTS LIMITED", Hong Kong, hereinafter referred to as the "Purchaser", represented by Director Schonberger A., on the one hand, and Limited Liability Company "LEVAKAN-M", Republic of Tajikistan, hereinafter referred to as the "Supplier" represented by Director, Azizov Kh., acting on the basis of the Charter, on the other hand, jointly referred to as the "Parties" and individually as the "Party" have entered into the current Supply Contract (hereinafter referred to as the "Contract") on the following:

Компания "SUPER PERFECT INVESTMENTS LIMITED", Гонг Конг, именуемая в дальнейшем "Покупатель", в лице Директора Шонбергера А., с одной стороны, и Общество с Ограниченной Ответственностью «ЛЕВАКАН-М», Республика Таджикистан, в лице Директора г-на Азизова Х., в дальнейшем «Поставщик», с другой стороны, совместно именуемые "Стороны", в отдельности "Сторона", заключили настоящий Договор поставки (далее "Договор") о нижеследующем:

1. Subject to the terms and conditions of the present Contract, the Supplier undertakes to produce and supply to the Purchaser the cotton fiber of 2013 harvest (hereinafter referred to as the "Cotton") and the Purchaser undertakes to receive and pay for the Cotton.

1. В соответствии с условиями настоящего Договора, Поставщик обязуется изготовить и поставить Покупателю хлопковое волокно урожая 2013 года (именуемое в дальнейшем "Хлопок"), а Покупатель обязуется принять и оплатить за хлопок.

2. The Supplier shall supply to the Purchaser the Cotton, produced at the Cotton Ginning Factories Nr 233, 223, 260 ("Samo"), 220, 232 of the Supplier located at, Republic of Tajikistan (hereinafter referred to as the "Gin").

2. Поставщик должен предоставить Покупателю хлопок, произведенный хлопкоочистительными заводами №№ 233, 223, 260 («Само»), 220, 232 Поставщика расположенными в Республики Таджикистан (далее именуемые "Завод").

3. The Supplier shall supply to the Purchaser 20'000 (twenty thousand) metric tons net weight of Cotton. The quantity of the Cotton supplied by the Supplier shall be stated in the waybill issued by the Supplier. The factual quantity of the Cotton shall be checked and confirmed by weighing carried out at the Gin in the presence of the authorized representative of the Purchaser. The Parties agree that the Purchaser shall accept the Cotton only if its quantity stated in the waybill is confirmed by weighing.

3. Поставщик обязуется поставить Покупателю 20'000 (двадцать тысяч) тонн весом нетто хлопка. Количество хлопка поставляемой Поставщиком должно быть указано в накладной выданной Поставщиком. Фактический вес хлопка должен быть проверен и подтвержден путем взвешивания, осуществленного на Заводе в присутствии уполномоченного представителя Покупателя. Стороны пришли к соглашению, что Покупатель будет принимать хлопок, только если количество, указанной в накладной, будет подтверждено взвешиванием.

4. The Cotton will be applied by the Supplier on the term *ex-works* at the Gin of the Supplier. The delivery of cotton under the present Contract has to be done in accordance with delivery schedule mentioned in Annex 1 which has to be signed by

4. Хлопок будет приниматься Поставщиком на условиях *ex-works* Завод Поставщика. Поставка хлопка по настоящему Договору должна быть осуществлена в сроки, указанные в графике отгрузок в Приложении 1 к настоящему

Parties and it is an integral part of the Contract.

If delivery shall not be executed within terms mentioned in Annex 1 for the Supplier's fault the Supplier has to pay 0,2% per day of the value of cotton based on Index "A" of Cotton Outlook valid on the 1st day of delay calculated in accordance with article 7 cotton which is not shipped on time.

5. The quality of the Cotton delivered under the Contract has to conform GOST and be confirmed by certificates of Gin. The Purchaser has right to verify the quality of the Cotton through its authorized representative by way of classification or testing by HVI.

6. The Cotton shall be packed into bales and marked in accordance with the standards and rules applicable in the Republic of Tajikistan. Packaging of the bales shall be suitable for export. Any defects in the packaging of bales discovered by the Purchaser through its representative shall be eliminated by repackaging at the Gin at the expense of the Supplier. The bales with defects in packaging shall not be accepted by the Purchaser until the defects are eliminated.

7. Parties have mutually agreed about the final price of cotton grade 1 type 4 delivered under the present contract is stated and calculated in US dollars per metric ton net weight as follows:

Index "A" FE of Cotton Outlook on the date of delivery    X    22,0462+4%-3,5%-60-36%    (trade discount)

8. As an advance payment the Purchaser shall provide the prepayment of the amount 5'000'000 (five million) US Dollars (hereinafter the "Advance",) for the Cotton. The Parties agree that the Advance payment shall be provided by the Purchaser within the following terms:

-3'500'000 US Dollars within 5 banking days from the date of receipt of valid Guarantee approved by Purchaser in accordance with article 9 of the Contract;

---

Договору.

В случае не выполнения поставки в сроки, указанные в графике отгрузок, по вине Поставщика, с него взымается 0,2% за каждый день от стоимости неотгруженного вовремя хлопка, рассчитанной по Индексу "A" Cotton Outlook, согласно статьи 7 настоящего Договора

5. Качество продаваемого Хлопка, поставленного по настоящему Договору, должно соответствовать ГОСТу и подтверждаться сертификатом Хлопкозавода. Покупатель имеет право проверить качество хлопка через своего уполномоченного представителя путем классификации или тестирования HVI.

6. Хлопок должен быть упакован в килы и маркированы, в соответствии с нормами и правилами, применяемыми в Республике Таджикистан. Упаковка кип должна быть пригодна для экспорта. Любые дефекты в упаковке кип, обнаруженные Покупателем через своего представителя, должны быть устранены путем переупаковки на Заводе за счет Поставщика. Кипы с дефектами упаковки не должны быть приняты Покупателем, пока дефекты не будут устранены.

7. Стороны приходят к взаимному соглашению, что окончательная цена хлопка 1 сорта 4 типа, поставленного по настоящему контракту, определяется и расчитывается в долларах США за тонну веса нетто по нижеследующей формуле:

Индекс "A" Cotton Outlook, на день поставки X 22,0462+4%-3,5%-60-36% (торговая скидка)

8. В качестве авансового платежа Покупатель производит предоплату в размере 5'000'000 (пять миллионов) долларов США (далее "Авансовый платёж"). Стороны соглашаются, что Предоплата должна быть произведена Покупателем в указанные ниже сроки:

- 3'500'000 долларов США — в течение 5 банковских дней со дня вступления в силу Гарантии, предусмотренной статьей 9 настоящего Договора;

2



-1'500'000 US Dollars — until 20.03.2013, after receipt by Purchaser of valid Guarantee in accordance with article 9 of the Contract.

The interest rate of 12% per annum shall be due and calculated from the amount of prepayment starting from the date of prepayment until the date of full delivery. Since August 2013 the Purchaser has the right of full or partial fixation of the final price, in accordance with article 7 of the present Contract, for cotton quantity 10'000 (ten thousand) tons net weight prepaid in accordance with articles 7 and 8 of the present contract. The final price of the rest quantity of cotton shall be fixed on the date of delivery and calculated in accordance with formula mentioned in article 7 of the present Contract.

The final settlement of advance payment and the interest rate of 12% should be made gradually upon delivery by reducing the payment for each quantity (net ton) delivered by 100% of the price calculated in accordance with article 7 of the Contract, unless it is fully settled. The payment for the rest quantity of cotton (exceeding the advanced payment) will be executed after each partial delivery and the signing of the **Act of acceptance and delivery** by the authorized representatives of the Parties in accordance with article 10 of the present Contract.

9. The fulfillment by the Supplier of its obligations to supply the Cotton under the present Contract shall be secured by a bank guarantee (hereinafter the "Guarantee") issued by OJSC "Agroinvestbank" as the "Guarantor" to amount of 11'000'000 (eleven million) US dollars, at the request of the Supplier as the "Principal" to the benefit of the Purchaser as the "Beneficiary". Parties agreed that the Guarantee has to be issued after agreement with Purchaser and fully correspond with Purchaser's requirements.

10. The obligations of the Supplier to deliver the Cotton to the Purchaser shall be considered discharged from the date of the signing of the Act

---

-, 1'500'000 долларов США – до 20.03.2013 после получения Покупателем действующей Гарантии, в соответствии со статьей 9 настоящего Договора.

К сумме предоплаты добавляется и начисляется процентная ставка за финансирование в размере 12% годовых от даты предоплаты и до даты отгрузки. Покупатель имеет право, начиная с августа 2013, на полную или частичную фиксацию окончательной цены, согласно статьи 7 настоящего Договора, на количество хлопка 10'000 (десять тысяч) тонн весом нетто, предоплаченного, согласно статьей 7 и 8 настоящего контракта. Окончательная цена на остальное количество хлопка будет определяться на дату поставки и рассчитывываться по формуле, указанной в статье 7 настоящего Договора.

Авансовый платёж и сумма начисленной ставки за финансирование 12% годовых должны погашаться постепенно путем снятия с каждого поставленного количества хлопка (тонна нетто) 100% цены, определенной согласно статьей 7 Договора, до их полного погашения. Оплата за остальное количество хлопка (не покрытое авансовым платежом) будет произведена после каждой частичной поставки и подписания Акта **приемки-передачи** хлопка уполномоченными представителями Сторон.

9. Выполнение Поставщиком своих обязательств по поставке хлопка по настоящему Договору, должно быть обеспечено банковской гарантией (в дальнейшем «Гарантия»), выданные ОАО «Агроинвестбанк», как «Гарант», на сумму 11'000'000 (одиннадцать миллионов) долларов США, по запросу Поставщика, как "Принципала", в пользу Покупателя, как «Бенефициара». Стороны договорились, что Гарантия должна быть выпущена после согласования с Покупателем и полностью в соответствовать его требованиям.

10. Обязательства Поставщика по поставке хлопка Покупателю считается выполненными с даты подписания Акта приемки-передачи



3



of acceptance and delivery by the authorized representatives of the Parties.

11. If Supplier breaches its obligations under the present Contract, the Purchaser shall be entitled to terminate the Contract unilaterally and demand the compensation of damages caused by such a breach, including the lost profit, in accordance with English law.

12. None of Parties shall be held responsible for nonperformance or improper performance under the present Contract, if such non-performance or improper performance is caused by force-majeure, which may include natural disasters such as fire, earthquake, flood, landslide; popular unrest, war, epidemics, riot.

13. The Party affected by the force-majeure shall inform the other Party within 24 (twenty four) hours from the moment of occurrence of the event of force-majeure. The Party referring to an event of force-majeure shall provide a documentary confirmation of the event of force-majeure issued by a competent authority.

14. Any issue which is not covered by the present Contract shall be governed and construed by the legislation of English law currently in force.

15. All disputes arising under or in relation to the present Contract shall be settled through direct negotiations of the Parties. In case of failure to reach a settlement of a dispute through direct negotiations, the dispute shall be settled by bylaws and rules of International Cotton Association, Liverpool.

16. The present Contract comes into force from the moment of its execution and shall remain valid until the moment when the obligations of the Parties are discharged in full.

17. No amendments to the present Contract shall valid unless made in writing and signed by the

хлопка уполномоченными представителями Сторон.

11. Если Поставщик нарушает свои обязательства по настоящему Договору, Покупатель имеет право расторгнуть Договор в одностороннем порядке и потребовать возмещения убытков, причиненных таким нарушением, в том числе упущенную выгоду, в соответствии с законодательством Англии.

12. Ни одна из сторон не несет ответственность за неисполнение или ненадлежащее исполнение по настоящему Договору, если такое неисполнение или ненадлежащее исполнение вызвано форс-мажорных обстоятельств, которые могут включать такие стихийные бедствия, как пожар, землетрясение, наводнение, оползень; народных волнений, войн, эпидемий, массовых беспорядков.

13. Сторона, подвергшаяся форс-мажорным обстоятельствам, уведомляет другую Сторону в течение 24 (двадцати четырех) часов с момента возникновения форс-мажорных обстоятельств. Сторона, ссылающаяся на форс-мажорные обстоятельства должна предоставить документальное подтверждение случая форс-мажорных обстоятельств, выданный компетентным органом.

14. Любой вопрос, не предусмотренный настоящим Договором, регулируются и излагается в соответствии с законодательством Англии.

15. Все споры, возникающие в рамках или в связи с настоящим Договором, будут разрешаться путем прямых переговоров сторон. В случае недостижения разрешения спора путем прямых переговоров, споры подлежат разрешению по правилам Международной Хлопковой Ассоциации, Ливерпуль.

16. Настоящий Договор вступает в силу с момента его подписания и действует до момента, когда обязательства Сторон исполнено в полном объеме.

17. Никакие дополнения к настоящему Договору не считаются действительными, если только не

4



authorized representatives of the Parties.

18. All Exhibits, Supplements and other documents, to which this Contract refers, represent an integral part of the present Contract.

19. The provisions of the present Contract shall be considered confidential, except for those provisions which represent publicly accessible information.

20. The present Contract shall be, made in 3 (three) original copies, one copy for the Supplier, one copy for the Purchaser and one copy for the Guarantor, in Russian and English languages, both having equal legal force.

21. Legal addresses and bank details of the Parties:
Purchaser:
SUPER PERFECT INVESTMENTS LIMITED
Level 28, Three Pacific Place,
1 Queen's Road East, Hong Kong
UNICREDIT BANK AUSTRIA AG
Schottengasse 6-8, A-1010 Wien, Austria,
SWIFT: BKAUATWW
USD account № AT07 1200 0509 7002 5604
Supplier:
Limited Liability Company "LEVAKAN-M"
str. Borbad 2, Kurgan-Tube, Khatlon region, Republic of Tajikistan
Bank: OJSC AGROINVEST BANK
Kurgan Tube, Branch 25 Vakhdat avenue, Tajikistan
Account number: 20206840144440002632
Swift: AGIBTJ22XXX
Correspondent bank: CITYBANK N.Y.
399, Park avenue, New York 10043, USA
Account in CITYBANK: 36253384.
SWIFT: CITIUS33XXX

Signatures of the Parties.
Purchaser: _____

Supplier: _____

---

совершены в письменной форме и подписаны уполномоченными представителями Сторон.

18. Все приложения, дополнение и другие документы, к которым относится настоящий Договор, являются неотъемлемой частью настоящего Договора.

19. Положения настоящего Договора считается конфиденциальной, за исключением тех положений, которые представляют публично доступной информации.

20. Настоящий договор составлен в 3 (трех) экземплярах, по одному экземпляру для Поставщика, один экземпляр для Покупателя и один экземпляр для Поручителя, на русском и английском языках, имеющих равную юридическую силу.

21. Юридические адреса и банковские реквизиты сторон.
Покупатель:
SUPER PERFECT INVESTMENTS LIMITED
Level 28, Three Pacific Place,
1 Queen's Road East, Hong Kong
UNICREDIT BANK AUSTRIA AG
Schottengasse 6-8, A-1010 Wien, Austria,
SWIFT: BKAUATWW
USD account № AT07 1200 0509 7002 5604
Поставщик:
Общество с Ограниченной Ответственностью «ЛЕВАКАН-М»,
Ул. Борбад 2, Курган-Тюбе, Хатлонская обл. Республика Таджикистан,
Счет: 20206840144440002632
Swift: AGIBTJ22XXX
Correspondent bank: CITYBANK N.Y.
399, Park avenue, New York 10043, USA
Account in CITYBANK: 36253384
SWIFT: CITIUS33XXX

Подписи Сторон
Покупатель: _____

Поставщик: _____

## ANNEX 1

### To the SUPPLY CONTRACT MC-009/2013 DATED 11.02.2013

### ПРИЛОЖЕНИЕ 1

### К ДОГОВОРУ ПОСТАВКИ MC-009/2013 ОТ 11.02.2013

| TERMS OF DELIVERY/ ПЕРИОД ПОСТАВКИ | QUANTITY TO BE DELIVERED, tons net weight/ ОБЪЕМ ПОСТАВКИ, тон вес нетто |
|---|---|
| SEPTEMEBER 2013/СЕНТЯБРЬ 2013 | 1000 |
| OCTOBER 2013/ОКТЯБРЬ 2013 | 3000 |
| NOVEMBER 2013/НОЯБРЬ 2013 | 4000 |
| DECEMBER 2013/ДЕКАБРЬ 2013 | 4000 |
| JANUARY 2014/ЯНВАРЬ 2014 | 4000 |
| FEBRUARY 2014 / ФЕВРАЛЬ 2014 | 4000 |



PURCHASER
ПОКУПАТЕЛЬ
SUPER PERFECT
INVESTMENTS LIMITED

SUPPLIER
ПОСТАВЩИК

6